UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR 08-00158 SJO |
| Plaintiff, | ) ) | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| v. | ) ) | [Docket No. 25] |
| ANGEL VALLADARES, | ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on Defendant Angel Valladares' "Motion to Suppress Evidence," filed August 4, 2008. Plaintiff United States of America (the "Government") filed an Opposition, to which Valladares replied. The Court held a hearing in this matter on October 31, 2008. For the following reasons, Valladares' Motion is DENIED.

I.  BACKGROUND

The Court finds the following events occurred on the night January 22, 2008.[1] Los Angeles Police Department Officers Aron Algren and Jason Schwab were investigating possible drug activity of several individuals in the common driveway of a multi-home complex in an area known for narcotics-dealing activity. (Algren Decl. ¶ 2; ¶ 4; Schwab Decl. ¶ 2; ¶ 4.) During a consensual

---

[1] In making its findings of fact, the Court evaluated testimony from Officers Aron Algren and Jason Schwab, Delroy Johnson, Lonzell Shells, Jessica Salas, and Louis Brown, as well as any exhibits admitted into evidence.

pat-down search, Officer Algren discovered methamphetamine on the person of Andres Perez. (Algren Decl. ¶ 9; Schwab Decl. ¶ 9.) Perez told Officers Algren and Schwab either that he was "visiting a friend in the southeast corner residence" or that he was "there to visit someone in Unit A (Valladares' residence)."[2] (Algren Decl. ¶ 11; Schwab. Decl. ¶ 11.) In addition, Officer Algren spoke to a neighbor who told him that a "gangster type" resided at 9402 Parmalee. (Algren Decl. ¶ 13; Schwab Decl. ¶ 13.) Based on this information, the Officers then knocked on Valladares' door, to verify what Perez had told them. (Opp'n. 4.) Officer Schwab was holding a metal door-pry, which he carries with him on most occasions, to force immediate entry when he suspects someone will destroy or remove contraband, especially narcotics. (Algren Decl. ¶ 15; Schwab Decl. ¶ 14.) The Officers observed a surveillance camera installed above the doorjamb, and a metal security door blocking the front door. (Algren Decl. ¶ 16; Schwab Decl. ¶ 16.)

When Valladares opened the door (he opened the front door but did not open the security door), the Officers smelled the "unmistakable and strong scent of marijuana."[3] (Algren Decl. ¶ 17 and testimony; Schwab testimony.) In addition, Valladares was "nervous and agitated" when they questioned him regarding his relationship with Perez. (Schwab Decl. ¶ 19.) The Officers asked Valladares to step outside his home to speak with them before demanding to enter.[4] (Algren Decl. ¶ 17; Schwab Decl. ¶ 20; Valladares Decl. ¶ 5.) The Officers told Valladares they smelled marijuana around his residence, had noticed the surveillance camera, and believed he was engaged in narcotics distribution. (Algren Decl. ¶ 17; Schwab Decl. ¶ 21.) Officer Schwab then told Valladares that if he closed his door, the Officers would force their way in. (Algren Decl. ¶ 17;

---

[2] Valladares and the Government differ regarding exactly what was said. In any case, Perez's statement led the Officers to Valladares' home.

[3] Although Mr. Johnson and Mr. Brown testified that there was no smell of marijuana emanating from Valladares' residence, the Court finds that Government Exhibit L, a cigar-sized marijuana blunt in an ash tray in Valladares' bedroom, corroborates the Officers' testimony. (*See* Pl.'s Ex. L.)

[4] Valladares claims the Officers did not ask him to come outside. Officer Schwab testified that he used a ruse and claimed someone called 911 regarding Valladares' residence in an attempt to have Valladares exit the premises. The Court finds this testimony credible.

2

Schwab Decl. ¶ 21.)  Valladares refused, slammed the door, and yelled "something to the effect of 'flush it.'"[5]  (Algren Decl. ¶ 18 and testimony; Schwab Decl. ¶ 22 and testimony.)  Officer Schwab then used his door-pry to force entry.[6]  (Algren Decl. ¶ 18 and testimony; Schwab Decl. ¶ 22 and testimony.)  Once inside the residence, the Officers detained Valladares and two other individuals.  (Algren Decl. ¶ 21; Schwab Decl. ¶ 23.)  While doing so, Officer Algren observed an upper receiver for an M-16-style assault rifle, and two packages of marijuana wrapped in cellophane.  (Algren Decl. ¶ 22.)

After the Officers escorted Valladares and the other two men out of the unit, they reentered to conduct a protective sweep.  (Algren Decl ¶ 23; Schwab Decl. ¶ 24.)  During the sweep, Officer Algren moved a box in the hallway to access the attic, and a 12-gauge shotgun fell from behind the box.  (Algren Decl. ¶ 24.)  Officer Schwab observed an electronic scale, narcotics, and a safe.  (Schwab Decl. ¶ 24.)

While an officer remained inside the residence to protect the evidence from destruction or tampering, Officers Schwab and Algren ran a check on Valladares, and learned that he was the subject of a No-Bail Probation Violation Warrant, and was on probation for a narcotics offense.  (Algren Decl. ¶ 28; Schwab Decl. ¶ 25.)  The Officers attempted unsuccessfully for two hours to contact a probation officer to determine if Valladares' probation included a residential search condition.  (Algren Decl. ¶ 28; Schwab Decl. ¶ 25.)  Officers Algren and Schwab believed with "close certainty" that Valladares was subject to a search condition, because in their near decade

---

[5] Although Officer Schwab's Declaration was unclear on the timing of Valladares' statement, he quickly clarified this point in his testimony, explaining that Valladares shouted "flush it" before the Officers forced entry.  Officer Schwab had no opportunity to discuss this issue with the Prosecutor or anyone else between the time the Court flagged it as an issue and the time he testified.  In addition, Officer Algren's testimony was consistent with Officer Schwab's on this point.  While Mr. Johnson testified that Valladares did not shout "flush it," the Court finds his credibility was significantly undercut by the testimony of Mr. Shells; among the contradictions in their testimony, Mr. Johnson testified that he observed the Officers' interactions with Valladares from Mr. Shell's window and observed the Officers force entry, while Mr. Shells testified that Mr. Johnson hid in Mr. Shell's closet while the Officers were entering Valladares' home.

[6] This is the only time Officer Schwab has used his door-pry to force entry in the several dozen times he has taken it on patrol.  (Schwab Decl. ¶ 14.)

3

each of experience, neither Officer had encountered a California state probationer on probation for a narcotics offense that was not subject to one. (Algren Decl. ¶ 29; Schwab Decl. ¶ 26.) Accordingly, the Officers did a full probation search of Valladares' home, recovering all of the items they had previously observed as well as additional firearms and narcotics. (Algren Decl. ¶ 29; Schwab Decl. ¶ 27.) The evidence seized included firearms and ammunition, counterfeit currency, body armor, a digital scale, a safe, two bags of methamphetamine, and approximately one-half kilo of marijuana.[7] (Algren Decl. ¶ 30; Schwab Decl. ¶ 27.) The Officers also obtained a search warrant to search the safe, from which they recovered additional firearms and narcotics. (Algren Decl. ¶ 31.) Approximately four hours after this search and six hours after the initial entry, the Officers learned that Valladares' probation included a search term. (Schwab Decl. ¶ 28.)

The Government charged Valladares with possession with intent to distribute marijuana and methamphetamine in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c), and felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). Valladares now moves to suppress all evidence recovered during the searches on the ground that the searches violated his Fourth Amendment rights under the United States Constitution.

II. DISCUSSION

Evidence may be suppressed as "fruit of the poisonous tree" if found to be the product of an unreasonable search or seizure. *See United States v. Segura*, 468 U.S. 796, 815 (1984). Warrantless searches and seizures are unreasonable unless they fall within one of the exceptions to the warrant requirement. *See Katz v. United States*, 389 U.S. 347, 357 (1967).

A. The Initial Entry Into Valladares' Home Was Justified By Exigent Circumstances.

Officers may enter one's home without a warrant to prevent the imminent destruction of evidence. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The government must demonstrate

---

[7]During the third search, the Officers discovered approximately 90 grams of methamphetamine and 500 grams of marijuana from kitchen cabinets. (Schwab Decl. ¶ 27.) The other evidence recovered during this search was either in plain view during the initial entry or discovered during the protective sweep.

4

"specific and articulable facts" to show that exigent circumstances existed at the time of entry. *LaLonde v. County of Riverside*, 204 F.3d 947, 954 (9th Cir. 2000).

Here, when Valladares opened his front door, the Officers smelled "the unmistakable and strong scent of marijuana" and Valladares was nervous and agitated. (Algren Decl. ¶ 17; Schwab Decl. ¶ 19.) In addition, the Officers observed a surveillance camera outside Valladares' front door, which could have alerted other occupants of the home to the Officers' presence and led them to destroy evidence of the marijuana that the Officers smelled. Further, Valladares yelled "flush it" as he slammed the door. (Algren testimony; Schwab testimony.) These specific, articulable facts "would cause a reasonable [officer] to believe that entry (or other relevant prompt action) was necessary to prevent . . . the destruction of relevant evidence. . . ." *United States v. Wilson*, 865 F.2d 215, 216 (9th Cir. 1989). Thus, the Officers' initial entry into Valladares' home was justified by exigent circumstances, and the Court DENIES Valladares' Motion to Suppress the evidence discovered during the initial entry.

B. <u>The Protective Sweep of Valladares' Home Was Lawful</u>.

A "protective sweep" is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327, 110 (1990). It is "narrowly confined to a cursory visual inspection of the places in which a person might be hiding." *Id.* The Fourth Amendment permits protective sweeps where "the searching officer possesse[s] a reasonable belief based on specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *Id.* (internal quotations and citations omitted).

Here, the Officers heard Valladares shout "flush it!" to someone inside the residence before first attempting to enter his home. During their initial entry, the Officers observed and Mr. Brown admitted that both Brown and a man referred to as Drastic ran to the rear of the residence. Because they Officers did not explore other areas of the residence at that time, they did not know if additional persons remained inside. Additionally, while detaining Valladares, Brown, and Drastic,

the Officers observed a 5.56mm upper receiver for an M-16 style rifle laying in plain sight. These specific and articulable facts reasonably warranted the Officers in believing that the residence harbored persons that posed a risk to officer safety, and justified a protective sweep of any areas of the house in which a person might have been hiding. The Court therefore DENIES Valladares' Motion to Suppress the evidence discovered during the Officers' second search.

C. The Evidence Obtained During the Third Search of Valladares' Home Is Admissible.

Once learning of Valladares' probation, the Officers attempted to contact a probation officer to determine whether his probation included a search condition. After two hours the Officers were still unable to reach a probation officer. They entered Valladares' home and recovered the contraband they had observed in plain view during their initial entry and protective sweep, as well as approximately 90 grams of methamphetamine and 500 grams of marijuana. (Schwab Decl. ¶ 27.) The Officers also obtained a warrant to search the inside of a safe that was in plain view, in which they found additional firearms and narcotics. (Algren Decl. ¶ 31.)

Valladares argues this evidence should be suppressed because at the time of entry the Officers did not know whether Valladares' probation included a search term.[8] The Government asserts it is admissible under the doctrine of inevitable discovery. Evidence is admissible, even if obtained unlawfully, if the government can prove, "by a preponderance of the evidence, that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). The purpose of inevitable discovery is to "ensure[] that the prosecution is not put in a *worse* position simply because of some earlier police error or misconduct." *Id.* at 443. The inevitable discovery rule does not apply "to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant. . . . To excuse the failure to obtain a warrant merely because the officers had probable cause and could have obtained a warrant would completely obviate the warrant requirement." *United States v.*

---

[8]The Officers felt "substantially certain" it did, because every person on narcotics probation that they have encountered was subject to such a condition. (Algren Decl. ¶ 29; Schwab Decl. ¶ 26.)

6

1 *Mejia*, 69 F.3d 309, 320 (9th Cir. 1995) (internal citations omitted).  The Government has the
2 burden of proving that illegally seized evidence is admissible under the rule.  *Id.* at 444.
3       Here, the Officers waited two hours between contacting Valladares' probation officers and
4 entering his home.  (Algren Decl. ¶ 29; Schwab Decl. ¶ 25.)  During this time, an officer remained
5 inside the home to ensure that the evidence was not lost or destroyed.  (Algren Decl. ¶ 28.)
6 Approximately four hours after the third search and six hours after their initial entry, the Officers
7 discovered that Valladares' probation was subject to a search condition.  (Schwab Decl. ¶ 28.)
8 It is extremely likely that had the Officers not entered when they did, they would have properly
9 entered and searched the residence once they confirmed the search condition.  Further, this
10 situation is distinguishable from one where officers enter without attempting to gain a warrant.
11 Here, the Officers tried contacting several of Valladares' probation officers for over two hours
12 before entering, at which point it was after 2 a.m. (Schwab Decl. ¶ 25.)  This good faith attempt,
13 and the fact that the probation officers confirmed Valladares' search term four hours after the
14 search, indicate that the Officers would have, not merely could have, entered lawfully.
15 Accordingly, the Court DENIES Valladares' Motion to Suppress the evidence discovered during
16 the Officers' third search.

III. **RULING**

For the foregoing reasons, Valladares' Motion is DENIED.

IT IS SO ORDERED.

November 5, 2008                                         /S/ S. James Otero

                                            S. JAMES OTERO
                                            UNITED STATES DISTRICT JUDGE